UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LEAH K., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23 CV 205 JMB |
| | ) |
| MARTIN O'MALLEY, | ) |
| Commissioner of Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

On December 2, 2021, Plaintiff Leah K. filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 301, *et seq.*, alleging that her disability began on September 10, 2020 because of cancer (breast and liver), anxiety and depression, and type 2 diabetes mellitus (Tr. 186, 206).  Her claim was denied by the Commissioner of Social Security through the administrative process and there is no dispute that she has exhausted her administrative remedies.  See 42 U.S.C. § 405(g).  Accordingly, this matter is before the Court for review of an adverse ruling by the Social Security Administration as set forth by an Administrative Law Judge (ALJ) on April 20, 2023 (Tr. 7-22).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

**I. Standard of Review and Legal Framework**

To be eligible for disability benefits, plaintiff must prove that she is disabled under the Act.  See Baker v. Sec'y of Health & Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  The Act defines a disability as the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A). A claimant will be found to have a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B); see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The Social Security Administration has established a five-step process for determining whether a person is disabled. See 20 C.F.R. § 404.1520; Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009). Steps one through three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed impairment. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009); see also Bowen, 482 U.S. at 140-42 (explaining the five-step process). If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. Pate-Fires, 564 F.3d at 942. "Prior to step four, the ALJ must assess the claimant's residual functional capacity (RFC), which is the most a claimant can do despite her limitations." Moore, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). The burden at step four remains with the claimant to prove her RFC and establish that she cannot return to her past relevant work. Moore, 572 F.3d at 523; accord Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006); Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th

Cir. 2005). If the ALJ holds at step four that a claimant cannot return to past relevant work, the burden shifts at step five to the Administration to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Banks v. Massanari, 258 F.3d 820, 824 (8th Cir. 2001); see also 20 C.F.R. § 404.1520(f).

The Court's role on judicial review is to determine whether the ALJ's finding are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." Id. Stated another way, substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 964 F.3d 959, 965 (8th Cir. 2010) (same). In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id.; see also Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (setting forth factors the court

Page 3 of 16

must consider). Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## II. Discussion

Plaintiff makes three arguments: 1) the ALJ failed to fully and fairly develop the record; 2) the ALJ failed to adequately evaluate pain; and 3) the ALJ failed to correctly consider medical opinion evidence. Each argument will be taken in turn.

A. **Development of the Record**

An ALJ has a duty to develop the record. Noerper v. Saul, 964 F.3d 738, 747 (8th Cir. 2020). This duty, however, "exists alongside the claimant's burden to prove her case." Id. An ALJ is not required to "disprove every possible ailment" but must "order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." McCoy v. Astrue, 684 F.3d 605, 612 (8th Cir. 2011).

Plaintiff first argues that the ALJ failed to inquire about and acquire medical records related to cancer treatment. The ALJ addressed Plaintiff's claim that she suffered from cancer:

> As for the alleged cancer, the record does note the claimant reported "she was lost to follow-up for breast cancer" but the provider noted there was no corresponding discharge (Ex. 10F/14). The record is insufficient to establish cancer as a medically determinable impairment and there is in no documented corresponding

>treatment. A physical or mental impairment must be established by objective medical evidence, i.e., it must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques, from an acceptable medical source. I cannot use a statement of symptoms or allegations regarding symptomatology (20 CFR 404.1502 and 404.1521). Regardless, the extent of all the claimant's symptoms is adequately considered under the umbrella of the impairments identified above.

(Tr. 13). In sum, the ALJ found that there were no medical records supporting a diagnosis of cancer, either breast or liver, and that any symptoms Plaintiff relayed were considered along with the symptoms of medically determinable impairments. An ALJ is certainly required to *develop* the record; however, the claimant has the burden of *providing* medical evidence, or at least identifying the same, that shows the existence and severity of an impairment. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."); Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) ("Ultimately, the claimant bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment."). Plaintiff has made no showing that she provided any medical evidence supporting a diagnosis of cancer; nor has she identified any additional limitations that were not considered by the ALJ as a result of a cancer diagnosis.

Nonetheless, Plaintiff identified cancer as a relevant condition and provided an indication of her treatment providers in her application (Tr. 206, 208-210); and, she testified at the January 11, 2023 hearing that she found out she had cancer around March, 2019 and that she "can't stand for anything to touch [her] stomach" as a result (Tr. 39). With this information and prior to the hearing, Defendant attempted to acquire medical records from the providers identified by Plaintiff (and her primary care physician) but was unsuccessful (Tr. 51-52 – documenting evidence received did not support a cancer diagnosis; Tr. 60 – same; Tr. 303-306 – January 5, 2022 letter from agency to medical provider seeking documents and response indicating that

none exist).  After inquiring at the hearing about Plaintiff's cancer treatment and the lack of records, Plaintiff testified that she was treated at Southeast Health Center of Stoddard County, in Dexter, Missouri (SEHC) (Tr. 32-33).  Thereafter, Plaintiff's counsel represented that SEHC failed to provide records and indicated that no additional documents would be provided (Tr. 256-257).  When Defendant requested additional records in February, 2023, SEHC did not provide any records related to cancer treatment (Tr. 523-527).  And, after being given the opportunity, Plaintiff provided no additional information nor did she request an additional hearing (Tr. 258-259).  In her subsequent appeal of the ALJ's decision, she did not mention the ALJ's failure to acquire treatment records related to cancer (Tr. 263-266).

There is no bright line rule to determine whether an ALJ has sufficiently developed the record and such a determination is made on a case-by-case basis.  Mouser v. Astrue, 545 F.3d 634, 639 (8th Cir. 2008).  In this case, Plaintiff identified cancer as a medical condition and Defendant attempted to acquire records related to that treatment from providers identified by Plaintiff.  After no success, the ALJ inquired about the lack of records and where those records might be at the hearing.  Defendant again attempted to acquire the records.  Plaintiff herself was unsuccessful in getting her own records and later elected not to pursue the matter any further.  There is no evidence that Plaintiff was mistaken as to the source of the medical records.  Moreover, there are no additional records, like on-going prescription medication, follow-up appointments, or any other type of records, that would suggest on-going treatment or symptoms related to cancer.  See, e.g., Gasaway v. Apfel, 187 F.3d 840, 843 (8th Cir. 1999).  On this record, the Court finds that the ALJ made a sufficient attempt to acquire records related to Plaintiff's supposed cancer treatments and develop the records as to any such treatment.

Relatedly, Plaintiff argues that the ALJ erred by failing to acquire consultative examinations despite the lack of medical records. The ALJ is not required to generate evidence by ordering additional consultive examinations. See Kamann v. Colvin, 721 F.3d 945, 950 (8th Cir. 2013) (stating that an ALJ may make a decision without obtaining additional medical evidence so long as other evidence in record provides sufficient basis for the decision); 20 C.F.R. § 404.1519a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim."). In this case, the ALJ noted that the only condition considered severe and that has more than a minimal effect on Plaintiff's ability is lumbar facet arthritis (Tr. 12). Plaintiff does not suggest that this particular condition requires additional examinations. The ALJ also found that additional conditions were non-severe because there were no complaints of resulting limitations in the medical records (osteoarthritis, non-ST segment elevation myocardial infarction, anxiety and depression);[1] they were controlled by medication of which Plaintiff testified she had no side effects (hypertension, hypothyroidism, diabetes mellitus); and, there was no evidence that they resulted in functional limitations (obesity, and other minor conditions, as well as anxiety and depression) (Tr. 13-14). Plaintiff does not challenge these findings. Plaintiff has pointed to no conflict in the record or absence of medical findings (other than as to cancer outlined above) that would have required a consultative examination.

Nonetheless, Plaintiff argues that the Defendant should have done more to acquire Plaintiff's own statements of her functional limitations; that Plainatiff should have provided a Functional Report and that the ALJ should have delved more deeply into her activities of daily

---

[1] Plaintiff does not challenge the ALJ's finding that Plaintiff does not have any disabling mental conditions that limit her ability to work.

living.  In considering the severe impairment of lumbar facet arthritis, the ALJ noted that imaging supported a finding that this was a severe condition but that there were "limited longitudinal musculoskeletal examinations" from July, 2022 to December 2022 in which Plaintiff was described as having a normal gait and station, well-functioning extremities, no back/neck/joint muscle pain, and normal range of motion (Tr. 16).  There also is no evidence that Plaintiff was prescribed a walker or that one is medically necessary despite her testimony that she used one around the house (Tr. 16).  As noted above, Plaintiff's other conditions were managed by medication for which there were no side effects (Tr. 40).

The ALJ goes on to point out that Plaintiff performs activities of daily living that are inconsistent with her alleged limitations (Tr. 16).  The ALJ outlined Plaintiff's testimony about her limitations -- that she could stand for 20 minutes, walk 30 feet, sit 20-30 minutes, and had pain upon lifting a gallon of milk (Tr. 16).  Next, the ALJ noted Plaintiff's testimony as to her activities; that she performs basic housework with breaks and that she can drive with no restrictions although she had not driven in four months due to low blood sugar.[2]  The ALJ concluded that:

> The physical capabilities required in performing these above reported activities support not only the residual functional capacity but also the finding under Step four of the sequential evaluation process that the claimant can perform past relevant work.

(Tr. 16).  While this statement in isolation is brief, the ALJ found that Plaintiff could perform her past relevant work because there were no medical findings that Plaintiff has functional limitations, she managed conditions with medication and without side effects, and she was able to perform basic household activities including driving.  Anderson v. Shalala, 51 F.3d 777, 779 (8th Cir. 1995) (relevant evidence of a claimant's RFC includes "medical records, observations

---

[2] The ALJ's statements about the skills necessary to drive are obvious and do not require evidentiary support.

Page **8** of **16**

of treating physicians and others, and [claimant's] own description of her limitations"). Unlike Nevland v. Apfel, 204 F.3d 853 (8th Cir. 2000), upon which Plaintiff relies, there is medical evidence in this case about how Plaintiff's impairments affect her ability to function – evidence that demonstrates a lack of restriction. Id. at 858. As such, the ALJ did not just rely on "raw medical findings" but instead viewed the evidence as a whole.

The ALJ is entitled to discount a claimant's statements of limitations when it is inconsistent with the record as a whole. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). The evidence as a whole, including clinical findings, observations of treating physicians, and Plaintiff's testimony about her activities, support the ALJ's finding that she was capable of returning to her past relevant work.

As to the lack of a Function Report, Plaintiff herself did not provide a Function Report and she has pointed to no case authority or regulation that requires an ALJ to ensure that Plaintiff provide such a report. Regulations describe Plaintiff's duty to provide complete records and set forth factors showing how her impairments affect her ability to work. 20 C.F.R. § 416.912 (a)(1)(vii) and (2). Notably, the same regulations do not place a burden on the Commissioner to create a Function Report. Id. § 416.912(b). There is no indication either in the record or in Plaintiff's brief that a Function Report would have added anything new or different to the material already in the record. Indeed, Plaintiff's statements at the hearing and the medical records are sufficient to determine Plaintiff's RFC.

B.     **Evidence of Pain and RFC**

Plaintiff initially focuses on her allegations of pain; however, she also argues that the ALJ did not adequately address, and instead ignored, Plaintiff's statement of her functional limitations in relation to the RFC found. A claimant's RFC is the most she can do in a work

Page **9** of **16**

setting despite her limitations. Schmitt v. Kijakazi, 27 F.4th 1353, 1360 (8th Cir. 2023) (citing 20 C.F.R. § 404.1545(a)(1)). When determining a claimant's RFC, the ALJ must consider "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of [her] limitations." Papesh v. Colvin, 786 F3d 1126, 1131 (8th Cir. 2015) (citations and quotation marks omitted). Thus, the ALJ must consider the claimant's prior work record and third-party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010); Polaski, 739 F.2d at 1322. The ALJ is not obligated to mechanically discuss each of the above factors; however, when rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing his or her reasons for discrediting the testimony, and the ALJ's credibility assessment must be based on substantial evidence. Vick v. Saul, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing Renstrom v. Astrue, 680 F.3d 1057, 1066 (8th Cir. 2012); Grba-Craghead v. Astrue, 669 F. Supp. 2d 991, 1008 (E.D. Mo. 2009)). On review by the court, "[c]redibility determinations are the province of the ALJ." Nash v. Comm'r, Soc. Sec. Admin., 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting Julin v. Colvin, 826 F.3d 1082, 1086 (8th Cir. 2016)). The court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." Id.

The ALJ recounted Plaintiff's testimony:

> At the hearing, the claimant testified that she is unable to return to work because of arthritis; numbness in arms, fingers, toes from diabetes; swelling in feet and arms daily; cannot stand for anything to touch her because of her cancer; and since her heart attack she forgets and cannot get around as much as she used to (Testimony) (Tr. 13).

> At the hearing, the claimant she testified that she could stand 20 minutes, walk 30 feet, sit 20-30 minutes, and she has pain with lifting a gallon of milk (Testimony). (Tr. 18).

In discounting Plaintiff's statements of her functional limitations, the ALJ found that "musculoskeletal examinations are unremarkable and do not reflect any complaints or associated treatment" and physical examination showed normal gait, no back, neck, joint, or muscle pain, and normal range of motion (Tr. 16). The ALJ further found that Plaintiff's activities of daily living belied her functional statements: that she did housework with breaks and drove with no restriction (although not within the last 4 months) (Tr. 16). The ALJ also found that Plaintiff testified that she had no side effects from her medications, that they were efficacious, and that she was able to access medical care (Tr. 17). Thus, the ALJ relied on the observations of third parties, the effects of Plaintiff's medications, Plaintiff's ability to do basic housework and drive, her limited medical treatments, and medical records in finding that Plaintiff's statements of her physical limitations were not credible – the ALJ did not merely rely on objective medical evidence.

Plaintiff argues that "the decision fails to detail specific inconsistencies or explain how plaintiff's limited daily activities or lack of side effects are inconsistent with her testimony of being able to sit for 20-30 minutes, stand for 15-20 minutes or walk 30 feet," that the ALJ failed to equate Plaintiff's daily activities with being able to perform a medium exertion job full-time, and that the ALJ improperly found that Plaintiff could operate a vehicle. First, the ALJ need only minimally articulate the reasons for rejecting Plaintiff's testimony. Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). The ALJ found that no medical examinations support Plaintiff's statements of functional limitations, that a number of her conditions were controlled by medications with no side effects, and that she was able to perform some household activities

despite requiring rest. Black v. Apfel, 143 F.3d 383,   The ALJ also noted evidence that detracts from her finding, like Plaintiff's work history.  Thus, the ALJ did not reject Plaintiff's statements of her functional limitations out-of-hand; rather, he found that they were inconsistent with the record as a whole.  Finally, as to driving, while Plaintiff argues that she had not driven for 4 months and the ALJ could not use the ability to drive as an indicator of functional limitations. However, as pointed out by the ALJ, Plaintiff did not stop driving because of pain or functional limitations; rather she stopped driving because she believed her diabetes (which, again, was controlled by medication) interfered with her focus.

C.     **Opinion Evidence**

When evaluating opinion evidence, the ALJ is no longer required to give controlling weight or any weight to opinion evidence.  20 C.F.R. 404.1520(a).  Instead, the ALJ is to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors.  20 C.F.R. § 404.1520c(b)(2).  Of these factors, an ALJ must explain how he considered the factors of supportability and consistency in his decision but need not explain how he considered the other factors.  20 C.F.R. § 404.1520c(b)(2).[3]  The supportability factor provides that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(1).  In articulating how she considers the supportability factor, an ALJ may properly consider that the physician's own treatment notes do not support the physician's opinion, that the physician did not consider certain evidence, or that the physician did or did not provide a detailed explanation for the opinion.  Starman v. Kijakazi,

---

[3] The other factors include the relationship with the claimant, specialization, and other factors which can include whether additional evidence was submitted after the date of the opinion.  20 C.F.R. § 404.1520c(c)(3-5).  An ALJ is not required to address all factors in her opinion.

2021 WL 4459720, at *4 (E.D. Mo. Sept. 29, 2021) (listing cases).  The consistency factor states that "[t]he more consistent a medical opinion(s) or prior administrative finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  In considering opinion evidence, an ALJ can be justified in rejecting an opinion if it contains no explanation of limitations despite containing areas where the doctor could explain the limitations found.  See Nolen v. Kijakazi, 61 F.4th 575, 577 (8th Cir. 2023) (finding that the ALJ appropriately gave a treating doctor's opinion little weight where the doctor "checked some boxes and left blank the short-answer section asking what objective medical findings supported his assessment"); Swarthout v. Kijakazi, 35 F.4th 608, 611 (8th Cir. 2022) (finding physician's opinion "entitled to relatively little evidentiary value on its face, because it was rendered on a check-box and fill-in-the-blank form").  Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018) (finding that a treating physician's opinion, made in conclusory fashion and which "cite[s] no medical evidence and provide[s] little to no elaboration" can be rejected on that basis alone).

Plaintiff highlights four opinions in this case provided by state agency Doctors Charity Sandvos/Eunive Gititu, and Stephen Scher/Scott Brandhorst.  Drs. Sandvos and Scher provided opinions at the initial stage and Drs. Gititu and Brandhorst provided the same consclusions at the reconsideration stage.  Plaintiff notes that the ALJ found Drs. Scher's and Brandhort's opinions, that Plaintiff did not have a severe psychological impairment, persuasive and found Drs.  Gititu's and Sandvos' opinions, that Plaintiff's physical impairments were non-severe, not persuasive.  Plaintiff argues that the ALJ failed to specifically cite to the record in her supportability and consistency findings.

The ALJ briefly addressed the opinion evidence. As to the psychological assessments, the ALJ found that:

> State agency consultants are highly qualified medical sources who are experts in the evaluation of medical issues in disability claims under the Social Security Act (See 20 CFR 1513a(b)(1)). The opinion is generally supported by the cited record and level of daily activities as well as consistent with the overall evidence of record at the hearing level continuing to show an ongoing lack of significant limitations (See e.g., Ex. 12F/2-3), i.e., the overall record is not consistent with the de minimis standard needed for a severe mental impairment such that a corresponding determination is appropriate at step two of the sequential evaluation process. (Tr. 17).

Dr. Branhorst noted that Plaintiff had no in-patient treatment for a psychiatric condition, that she did not see a specialist for any condition, that she was treated for anxiety and depression by her primary care physician, examinations by her doctor were unremarkable, and that she reported getting along with others, no difficulty following instructions, and that her limitations were due to her physical impairments (Tr. 61). The ALJ, albeit briefly, found that the expert's opinion was supported by his qualifications and the record cited and also consistent with the record as developed by the ALJ including Plaintiff's testimony. Plaintiff is correct in noting that the ALJ did not list all the evidence cited by Dr. Branhorst nor did the ALJ cite to specific instances of Plaintiff's testimony or subsequent medical records. However, this level of detail in this particular part of the opinion is unnecessary because the ALJ addressed supportability and consistency in other areas of decision.

Plaintiff makes no showing that the evidence relied upon by Dr. Branhorst, including Plaintiff's statements during a telephone interview, are irrelevant or erroneous. Thus, the ALJ's assessment that Dr. Branhorst's opinion as supportable has basis in the record. Moreover, Plaintiff makes no showing that the ALJ erred in finding that her psychological conditions are not severe based on the medical evidence, leading to a finding that Dr. Branhorst's opinion is

consistent with the record. In doing so, the ALJ noted that other than treatment by her primary care physician, there is no evidence that she has had counseling or psychotherapy, specialist treatment, or hospital visits to address her mental health (Tr. 13). Plaintiff also denied depression and anxiety during examinations, behaved appropriately during medical visits, and that her reports of daily living are not affected by any mental limitations (Tr. 13-14). Plaintiff does not challenge these findings. Indeed, much of the focus of Plaintiff's claim is on her physical impairments. Austin v. Kijakazi, 52 F.4th 723, 729 (8th Cir. 2022) (finding that any error by the ALJ on conditions that are not the "primary basis" of a disability claim harmless).

>As to the physical assessments, the ALJ found:

> In contrast, the prior administrative medical findings on reconsideration, which affirmed the initial determination that the claimant did not establish a severe medically determinable physical impairment, is not persuasive (Ex. 1A; 4A). While the medical consultant's opinion is arguably supported by cited treatment records at the time as well as level of daily activities, this opinion is not consistent with the record at the hearing level (See Ex. 9F/7) supporting the de minimis standard needed for a severe physical impairment to the extent of the limitations provided for herein. (Tr. 17).

Dr. Gititu noted that physical examinations were generally normal, that there is no documentation of a cancer diagnosis, neurological examinations were unremarkable, that her other conditions were non-severe, and that Plaintiff indicated pain due to cancer treatments along with fatigue (Tr. 60). Unlike the conclusion of this opinion, the ALJ found that Plaintiff did suffer from a severe physical impairment as set forth above.

>Plaintiff's argument with respect to Dr. Gititu's opinion is not altogether clear: the ALJ found Plaintiff suffered from a severe condition while the expert did not; therefore, it is unclear how the opposite conclusion would benefit Plaintiff. Indeed, Plaintiff's argument is simply a criticism of how the ALJ discounted an opinion that in any event would not help Plaintiff. Certainly, the ALJ could have written more; but an "arguable deficiency in opinion-writing

technique does not require" reversal of the Commissioner's decision. Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008). Finally, Plaintiff's reference to migraine headaches is undeveloped and requires no further analysis. Vandenboom v. Barnhart, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting "out of hand" undeveloped and conclusory arguments).

* * * * *

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 12th day of November, 2024

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE